## REYNOLDS *v.* REYNOLDS ET AL.
## REYNOLDS, EXRX., *v.* REYNOLDS ET AL.
## GOTT *v.* REYNOLDS ET AL.·

*Wills — Time of taking effect — After-acquired property — Section*
*10579, General Code — Wife as trustee for children — Title of*
*wife in after-acquired realty — Child born after will executed —*
*Share of child under codicil — Interest of contingent devisees —*
*Termination of trust at time stipulated.*

1. A will is ambulatory in its nature, and takes effect only from the
   death of the testator.
2. The doctrine of implied revocation that existed at common law
   prior to the English Wills Act of 1837 does not obtain in Ohio
   as to after-acquired property devised by will, by virtue of Section
   10579, General Code.
3. At the time of the execution of his will a testator had two
   married daughters, children of a first wife, and a son E, who
   died before the testator and before he reached the age of thirty
   years. Testator also had two children, C and M, by a second
   wife; and, after the making of the will and before the execu-
   tion of the codicil, another son, J, was born. The will devised
   all the real estate of which testator died seized to his wife,
   subject to certain trusts in favor of his three children other than
   his two married daughters, and provided that his wife should
   hold such real estate as trustee, and deed the different designated
   parcels respectively to such children on May 9, 1914. The codicil
   provided for a similar disposition of a piece of real estate
   acquired subsequent to the making of the will for the benefit
   of J, and further provided that the devise to J was subject
   however "to all the conditions imposed upon my other real
   estate, as mentioned and set out in my above will, and desire
   that it be placed in the same category in every respect as my
   other said real estate." Testator after the execution of the
   will and codicil acquired other real estate. ·*Held:*
   That all the real estate of which testator died seized passed to
   and vested in the widow subject only to the trusts as to the
   tracts enumerated in the will, and she acquired a fee simple
   estate in the after-acquired realty.
4. Although such will also provided that should E, C, and M die,
   leaving no child or children, or should any two of them die,
   leaving no children or child, the survivor or survivors should

take the share of such deceased person or persons, J took the same share in the real estate devised to E, who had died, as the other survivors, by virtue of the codicil.

5. Such will also provided that should E, C, and M die without leaving issue their several shares should be divided equally between the widow and the two married daughters. *Held:*

A definite time having been named for the ending of the trust and the conveyance of the respective parcels of real estate to the children, and they having received their portions in keeping therewith, and the contingency provided for under which the married daughters might have acquired title not having arisen they had no interest whatever in the real estate.

(Decided June 24, 1918.)

APPEAL: Court of Appeals for Hamilton county.

*Messrs. Powell & Smiley* and *Mr. H. E. Engelhardt,* for Statia B. Reynolds et al.

*Messrs. Moulinier, Bettman & Hunt,* for Mary L. P. Reynolds Gott.

JONES, P. J.   The second of these cases (No. 1291—*Statia B. Reynolds, Exrx.,* v. *Statia B. Reynolds et al.*) is an appeal from an action to construe the will and codicil of Edmund Bonaparte Reynolds; while the other two cases (No. 1290—*Charles Arthur Reynolds* v. *Statia B. Reynolds et al.,* and No. 1295—*Mary L. P. Reynolds Gott* v. *Charles Arthur Reynolds et al.*) are appeals from actions to partition part of the real estate of which he died seized, involving also a construction of his will and codicil.

The will was executed under date of February 17, 1890, and the codicil under date of May 30, 1896.  Testator died in January, 1907.

At the time the will was executed testator had

tory situated on Langdon Alley in rear of Nos. 11 and 13 East Sixth Street  *  *  *.

"All of the above property to be held in trust by my said trustee, the said Statia B. Reynolds, until the year 1914 (May 9th), when my said daughter Mary Lurany Palmer Reynolds shall attain her thirtieth year. At that time I direct my said trustee, or her successor, to convey by a good and sufficient deed in fee simple said above described real estate, to my said daughter, Mary Lurany Palmer Reynolds.

"Sixth: I hereby give, devise and bequeath to my beloved wife, Statia B. Reynolds, two pairs of diamond ear rings, one two and one-half carats and one of six carats; also two diamond finger rings (one solitaire, and one five-stone ring), and all other jewelry now in her possession; also piano, household furniture and all other articles of family and domestic use.

"My wife is also to have the use of my residence No. 182 Sycamore Street, Cincinnati, Ohio, without paying any rent therefor, for the term of five years after my death, and this I give to her in lieu of her widow's allowance for one year, which, under the laws of Ohio she would be entitled to. My wife may remain in the house, or rent the same, if she so desires, and the rent therefrom she shall apply to her own and separate use, provided, however, she remains unmarried, but upon the marriage of my said wife, then my residence shall be rented and proceeds 'pooled' with the income from my other real estate, and divided, as set forth in the succeeding clause of my said will, to wit: Clause No. Seven. Between my said wife, my two

sons, Edward and Charles Arthur, and my daughter, Mary Lurany Palmer.

"Seventh: I hereby direct and will that all income derived from rents on all of my real estate shall be collected monthly by my said trustee, and 'pooled' in one general fund, one-quarter of which amount shall each month be deducted and placed to the credit of, and known as a special expense fund, which fund shall be kept separate and apart, and used only by my said trustee to pay all taxes, insurance, improvements, and repairs on all of my said real estate.

"At the end of every three months, I hereby direct my trustee, or her successor, to divide the net proceeds of all said income equally among my sons, Edward Reynolds, Charles Arthur Reynolds, my daughter, Mary Lurany Palmer Reynolds, and herself, until such times as I have above stated, when my said children above named are to receive in fee simple and absolutely their respective legacies.

"But it is my will that if any of my children herein named, to wit: Edward, Charles Arthur, or Mary Lurany Palmer, should die before attaining the age of thirty years, leaving a child or children, then such child or children shall take such father or mother's share, as the case may be. In the event the said Edward, Charles Arthur, and Mary Lurany Palmer should die leaving no child or children, or should any two of them die leaving no children, or child, it is my will that the survivor or survivors shall take the share of such deceased person or persons.

"In the event that all of the above named children should die without leaving issue, I give, devise and bequeath their several shares to be divided equally between my wife, Statia B. Reynolds, Virginia Palmer Griffith, and Cora Belle Dresser, and their heirs forever, share and share alike."

The codicil provided:

"I hereby ratify and confirm said will in every respect, save so as any part of it is inconsistent with this codicil.

"Since making the above will, there has been born to me a son, Joseph Berchmans Reynolds. On May 29, 1896, I purchased the premises known as Nos. 913 and 915 Race Street, Cincinnati, Ohio, from Mary T. Fry . * * *. Desiring to make proper provision for my said son, Joseph, I give and bequeath to my said son, Joseph Berchmans Reynolds, such premises, subject, however, to all the conditions imposed upon my other real estate, as mentioned and set out in my above will, and desire that it be placed in the same category in every respect as my other said real estate. When my said son, Joseph Berchmans Reynolds, becomes of age, I desire that said real estate be conveyed to him in fee simple by my said trustee above named."

From the fact that this will enumerates all of the several parcels of real estate owned by the testator at the time of its execution, and the only additional parcel acquired up to the time of the execution of the codicil was described in it, and from the fact that all of these parcels of real estate were subject to the trust created and the provision that after a definite period they should severally be conveyed in fee simple to the respective children, it is contended

by counsel that the words of the second item of the will, disposing of the real estate to Statia B. Reynolds, did not convey any interest to her except that which she might take under the trust, and were intended to be limited strictly to the real estate owned at the time of the execution of the will and codicil. This construction is directly against the terms of the will and the clear intention of the testator.

A will is ambulatory in its nature, and takes effect only from the death of the testator.

The doctrine of implied revocation that existed at common law prior to the English Wills Act of 1837 does not obtain in Ohio as to after-acquired property devised by will. *Ridenour* v. *Callahan et al.,* 8 C. C., N. S., 585.

This rule is embodied in our statute, Section 10579, General Code:

"Any estate, right or interest, in lands or personal estate or other property acquired by the testator after making his will, shall pass thereby, as if held or possessed at the time it was made, if such manifestly appears by the will to have been his intention."

The words of the will do not confine the real estate devised to the wife to that which testator then owned, but described it as "all the real estate of which I may die seized." The fact that he further added the clause, "all of said real estate being situated in Cincinnati, Ohio," does not limit the real estate to any particular parcel. It happens that the after-acquired real estate was also all situated in Cincinnati, but the general statement in the will is far different from the language relied upon

two married daughters, who were children of his
first wife, and a son Edward Reynolds, who died
December 1, 1897, unmarried and without issue,
before reaching the age of thirty years. He also
had two children, Charles Arthur and Mary
Lurany Palmer Reynolds, by the second wife; and
after the making of the will and before the execu-
tion of the codicil another son was born, Joseph
Berchmans Reynolds. His second wife, Statia B.
Reynolds, and all of these children, except Edward,
survived him.

The will is holographic and is too long to quote
in full, involving as it does lengthy descriptions of
real estate and several items which it is unneces-
sary to discuss in the consideration of the ques-
tions disputed in these cases.

The will devised all the real estate of which tes-
tator might die seized to his wife, subject to cer-
tain trusts in favor of his three children other than
his two married daughters, and provided that his
wife should hold such real estate as trustee and
deed the different parcels respectively to such chil-
dren on May 9, 1914. The codicil provided for a
similar disposition of a piece of real estate acquired
subsequent to the making of the will, for the bene-
fit of the youngest child, Joseph Berchmans Rey-
nolds, who was born after the making of the will
and thus occasioned the drawing of the codicil.

In addition to the real estate particularly de-
scribed in the will and codicil, all of which was
owned by testator at the time of his death and
which included an undivided one-half interest in
certain property fronting on East Sixth street,
Sycamore street, New street and North street,

which at the time of the making of the will and codicil he owned in connection with S. T. J. Coleman, and which was called because of the shape, the four pieces backing up together, "the Maltese cross," testator, after the execution of the codicil and prior to his death, acquired from Coleman the other undivided one-half interest in these parcels known as the Maltese cross, and also acquired another piece of real estate fronting on the north side of Sixth street, between Main and Sycamore streets, called the "Peck" property.

One of the main questions in the case is whether this after-acquired property passed under the will, or whether as to it Edmund B. Reynolds died intestate.

This involves the question as to what interest the widow Statia B. Reynolds acquired in the real estate under the will.

Another question to be determined is as to the disposition of the property which under the third item of the will was devised to Edward Reynolds, who, as above stated, died before his father.

The will in item nine gave to each of the daughters of the first wife, namely Cora Belle Dresser and Virginia Palmer Griffith, a legacy of $1,000, and it made no further provision for these daughters, stating in that item testator's reasons for such action. After its probate an action to contest the will was filed by these daughters against the executor and devisees, which was settled by the payment to them of $15,000 in addition to the legacies, and a receipt was given by them "in full for all claims and demands of whatever nature we or either of us have against the estate of Edmund B.

Reynolds, deceased. The said amount representing what we have agreed to accept in full for our share in the estate of the said Edmund B. Reynolds, deceased."

Cora B. Dresser and Virginia P. Griffith, however, while asserting no present interest in the real estate of which their father died seized, are contending that under item seven of the will they are still entitled to a remote contingent interest in certain real estate which was placed in trust under the will. The other parties to the litigation resist this claim, and insist that if a construction were had which would allow the claim, they would be estopped from asserting any interest by reason of this settlement.

In order to discuss these questions it is desirable to set out the language used in certain paragraphs of the will, as follows:

"Second: I hereby give, devise and bequeath to my beloved wife, Statia B. Reynolds, all the real estate of which I may die seized, all of said real estate being situated in Cincinnati, Ohio, subject, however, to the following trusts, to wit:

"Third: I hereby give, devise and bequeath to my son, Edward Reynolds, his heirs and assigns forever, the premises known as Nos. 7 and 9 East Sixth Street, Cincinnati, Ohio. [Further description omitted.] The said above described premises to be held in trust by my said trustee, the said Statia B. Reynolds, until the year 1914 (May 9th), when the said Edward Reynolds shall attain his thirtieth year. At that time I direct my said trustee, or her successor, to convey by a good and suffi-

cient deed in fee simple, said above described real estate, to my said son, Edward Reynolds.

"Fourth: I do hereby give, devise and bequeath to my son, Charles Arthur Reynolds, his heirs and assigns forever, the following real estate, to wit:

"The premises known as No. 158 Main Street, Cincinnati, Ohio * * * also an undivided one-half interest in the premises known as Nos. 44 and 46 East Sixth Street, Cincinnati, Ohio * * * also, the undivided one half of the premises known as No. 206 Sycamore Street * * * also the undivided one-half of the premises known as No. 7 North Street, Cincinnati, Ohio * * * also Nos. 9 and 11 North Street. Also Nos. 3 and 5 New Street, as deeds to Coleman will show the size of lots, the above named property, with the exception of the first mentioned piece, being owned jointly by S. T. J. Coleman and myself, all of the above property to be held in trust by my said trustee, the said Statia B. Reynolds, until the year 1914 (May 9th), when my said son Charles Arthur Reynolds, shall attain his twenty-eighth year. At that time I direct my said trustee, or her successor, to convey by a good and sufficient deed in fee simple said above described real estate to my son Charles Arthur Reynolds.

"Fifth: . I do hereby give, devise and. bequeath to my daughter, Mary Lurany Palmer Reynolds, her. heirs and assigns forever, the following real estate, to wit: situated on the east side of Sycamore Street, Cincinnati, Ohio, being. the premises known and described as No. 182 Sycamore Street * * * also the five-story brick building or fac-

in *Wheeler, Admr.,* v. *Brewster et al.,* 68 Conn., 177, which .case is readily distinguished from this.

Under the second item of the will it was the clear intention of testator to devise to his wife all of the real estate of which he died seized, subject only to the trusts enumerated in the will and its codicil, and such construction must therefore be given.

Although words of inheritance are not mentioned, under the statutory rule found in Section 10580, General Code, this devise carried to Statia B. Reynolds an estate in fee simple in the real estate acquired after the execution of the will and codicil, which was the undivided one-half of the "Maltese cross" and the lot on the north side of Sixth street known as the "Peck" property.

The next question which presents itself is, What disposition is made of the parcel to be conveyed to Edward Reynolds under item third?

The third paragraph of item seven undertakes to provide for the contingency of the death of the three children who were beneficiaries of the trust and to whom certain parcels were to be conveyed. If the will stood alone, without any codicil, the property devised to Edward under this paragraph would pass to Charles Arthur and Mary Lurany Palmer Reynolds. But the codicil must be construed in connection with the will. Undertaking to provide for the after-born son Joseph Berchmans, and the newly-acquired property offering an opportunity to do so without disturbing the previous disposition made to the other three children in the will, testator without the labor of rewriting the will undertook by means of the codicil to put the newly-acquired property and the new son under the same trust

which the will had already provided for his other property and his three other children. And in so doing, in the opinion of the court, he undertook to place Joseph Berchmans Reynolds, as well as the Race street property, "in the same category in every respect" as his three other children and his other parcels of real estate under the trust provided by the seventh item of the will.

This apparently has been the construction of the parties. The rentals from the Race street property have been placed in the same "pool" in one general fund, and the net revenue has been distributed equally among the widow, Charles Arthur, Mary Lurany Palmer and Joseph Berchmans. It would be a narrow construction of this codicil, and not in accordance with the evident intention of the testator, to construe its words to apply only to the land, and not to the individual, Joseph Berchmans Reynolds. Undoubtedly, had Joseph died without issue before attaining the age of twenty-one, and had Edward survived, Mrs. Gott would be insisting upon her right to participate in a share of the Race street property under the terms of the third paragraph of the seventh item of the will.

A careful consideration of the will in connection with the codicil—and under the law they must be treated together as one document—would practically disclose the intention of the testator that the codicil should be construed as though the entire will were rewritten and the codicil placed in the will, occupying a position similar to items third, fourth and fifth, making item seventh apply in full to it.

Under this construction we hold that the real estate devised to Edward in item third, known as

Nos. 7 and 9 East Sixth street, passes in fee simple in equal shares to Charles Arthur, Mary L. P., and Joseph Berchmans Reynolds.

This construction of the codicil does not extend to placing Joseph Berchmans in the tenth item of the will, and he takes no share under the will or codicil in the personal property of testator.

The only other question to be determined is as to the remote contingent interest of Virginia P. Griffith and Cora Belle Dresser under the last paragraph of the seventh item of the will.

While the first two lines of this item of the will. "In the event that all of the above named children should die without leaving issue," relate in general terms to the death of the previously named children, this paragraph must be read in connection with the language preceding in item seven. This preceding language fixed a definite time for the ending of the trust and the conveyance to such children of their respective parcels of real estate in fee simple. This time was May 9, 1914, as to all except Joseph Berchmans Reynolds, for whom it was August 20, 1916. The time of the termination of the trust has therefore passed as to all of these children, and they have, or should have, received their respective titles in fee simple, and the contingency provided for, under which Mrs. Griffith and Mrs. Dresser might have acquired title, has not arisen, and they therefore have no interest whatever in this real estate.

Decrees may be taken in accordance with the construction above given.

*Decrees accordingly.*

WILSON and HAMILTON, JJ., concur.